Call case number two for the morning, please. The next case for argument, case number 20-1966, Western Missouri, R. Henson v. Union Pacific Railroad Company, et al. All right, Mr. Buchanan. Yes, your honor. Good morning. May it please the court. As alleged in his petition filed in Missouri State Court, this was a suit by Randall Henson alleging violations of the Missouri Human Rights Act for age discrimination, hostile work environment, retaliation, and constructive discharge against Defendants Union Pacific Railroad and Foster McDaniel, who was manager of something called the Truck Desk. The defendants removed this case to the Western District of Missouri on the grounds of diversity of jurisdiction and alleged that McDaniel had been improperly joined on the basis of the fraudulent joinder doctrine as articulated by this court in the Phila versus Norfolk Southern Railway case. The decision of the district court, the court granted the motion to dismiss Mr. McDaniel and denied the motion to remand filed by Randy Henson, and the appeal here, the issues as the court is aware, are simply was that the correct decision. We believe the court should reverse that decision and remand to the State Court of Missouri. We believe the court improperly failed to consider the claims which the facts in the petition support, including hostile work environment based on age, retaliation, and the remaining claim as the court later dismissed for constructive discharge. What was the district court's basis for dismissal? The court found that, as pleaded, that the claims were barred by the statute of limitations contained in the Missouri Human Rights Act because they were not timely. In other words, the court said that the amendments to the Missouri Human Rights Act in August of 2017 eliminated supervisor liability and in essence said we're not considering, well, it ignored, if you will, the claim for hostile work environment and proceeded to dismiss the claim only for August 1, 2018 when Mr. Henson resigned or we allege was forced to quit. Let me follow up on the Chief's question, which is I just want to understand the nature of the claim. The hostile work environment claim is clear. You're arguing that in your brief. I noticed that basically the district court ignored it. What about the other two claims, the retaliation and the discrimination claims? Do you agree at this point that they would be barred by the statute of limitations? I want to be clear about the nature of your argument. Yes, thank you. The question is whether they would be barred. We think the retaliation claim is allowed against an individual. There are cases directly holding that in the Western District of Missouri, the federal courts, because of the wording of the Missouri statute is different than the federal retaliation statute. It's, quote, exceedingly broad under the Keeney almost anything that results in damages is considered retaliation. You do not have to have an adverse employment action under the Missouri retaliation statute. You're not in Kansas anymore, if you will, Your Honor. That's the way it works in Missouri. That's probably why they amended it, judges. They didn't like the way it worked. It was too, if you will, pro-plaintiff. So that's all gone now. There is no supervisor liability. If that answers your question, we believe those claims are still valid and would lie against him in state court under the applicable instruction to the jury. We believe that as alleged in the petition. What color will claim do you, would you still have based on McDaniel's actions? We believe that the colorable claims are against McDaniel for, A, being the manager of the truck desk and the nature of supervisor liability under Missouri law. In Missouri, it's any person acting in the interest of the employer, and as the court held in Hill v. Ford, that clearly covers the supervisor. So what actions did, what actions do you allege that McDaniel actually committed that were in violation of your client's rights? Yes, number one would be that he oversaw this transfer to the truck desk and participated in keeping Mr. McDaniel and the other older in the dark. Under Missouri law, liability of a supervisor isn't just based on direct participation. In other words, before the date of the statute, we allege in the petition, of course, as you know, that he had a confrontation, if you will, where he told Mr. Henson that, don't worry, this job will be yours until you retire. From our standpoint, construed in favor of the plaintiff, that means you're going to be stuck at the truck desk, encouraging him, if you will, to resign. But the petition also includes the fact that Mr. McDaniel was telling a lie when he did that, and it goes on to say that he aided and abetted the scheme to get rid of older employees. That theory, which may or may not be viable in federal court, is directly down Main Street in Missouri under the Cox v. Kansas City Chief's case. In fact, that was the holding of Cox as one of the attorneys on that case, that you can have a claim for age discrimination, and the MeToo witnesses are allowed to come in and say, I also was sent to the truck desk. I'm over 60. Why were you sent? They refused to tell me. So, Judge, keeping him in the dark and keep lying to him about why he was there before the statute was actionable. But if that answers your question, Your Honor. But beyond that, the petition alleges about 20 paragraphs of facts, all before the amendment took effect, and I think the bulk of the allegations, the Union Pacific tries to argue in their brief, the crux of their argument, well, anyway, even if we say that the bulk of the allegations pertain to things after the effective date, so if you're just weighing how much weight you give, well, at least 20 paragraphs, starting with paragraph 29, deal with what happened from June to August, and there's at least 10 or 15 incidents alleged in there, including by Mr. Foley, who was a direct supervisor, and by the way, under Missouri law, under the Hill case, you need not be a direct supervisor to be sued for supervisor liability. It's just if you're in, you don't even have to be in the chain of command is the direct holding, nor do you have to allege an adverse employment action. So again, the defendant, and we believe the district court, decided this case as if it were under the new law, which they said there's no supervisor liability. So the district court dismissed it and held that he was improperly joined. Later, in a couple of his further orders, the judge seemed to realize that, oh, the hostile work environment claim. Yes, that was properly alleged in the petition. He said it was facially plausible, the district court said, so I'm going to allow you to add it now, but only against the railroad. You can't say, well, that's because there's only one incident alleged in the petition, and I think that may be what this court thinks. Well, there's only one comment. However, on a motion to remand, the court is allowed to pierce the pleadings and take a little further look than just saying, well, is there enough here to make it plausible, to make it reasonable? In other words, is there a possibility a court's going to say, yes, Mr. McDaniel, you have to stay in this case until trial? And they cite no cases of any kind saying that this claim accrued before the effective date of the statute. Under federal law, of course, under the Morgan case of the United States Supreme Court held in 2002, that to be timely, you only need one, any act within the 300-day window. Well, in the 180-day window before October 25 of 2017, when he filed his charge, there were numerous incidents alleged, as again, over 20 paragraphs of the petition, your honors, were covering that time frame. So, if you look at it from A, there is no Missouri law. That means maybe they should have a chance to look at that issue before the federal court definitively decides it, even though Judge Fenner believed, I have to figure this out. I've got to get my head around this. And in his third order, granting summary judgment, he did say, well, we can't have a claim for hostile work environment against Mr. McDaniel. Again, that issue wasn't even briefed at that point, but he puts in a footnote, sorry, by the way, no, that claim can't fly just because there's only one incident alleged, in effect, just parroting back what the railroad had said. So, that's their position of when it accrued. We do cite the McDonnell v. Chamber of Commerce of Independence case, a 2019 case, to provide this court with some guidance since the date of the decision in which they said it's whether the discriminatory conduct, when it's alleged to occur, and in the Widener case that I worked on as well, it was decided just in 2020 that we cite says it was at the time of the injury. So, when does an injury occur from a hostile work environment? Well, it accumulates. So, there isn't a definitive date. It's when the last act of harassment within the 180-day or 300-day window occurs. That's when it could be said to accrue. But again, classic case of no Missouri directly holding that the case should be dismissed, and more so, it's right on that borderline between two statutes when now everyone knows there's no supervisory liability. That's a clear demarcation. But just because the charge was filed after that date, for example, if the charge were filed before August of 2017, I think this court would have no difficulty saying, okay, that's timely, presumably because all of the incidents occurred before that date that are in said charge. Here, it was filed a few months after the amendment. But you look back 180 days for timeliness. You do not study just the date of the filing. And secondly, as this court held long ago, I guess you could say in the Neufeld versus Searle case. In Neufeld, Judge Richard Searle said, we don't know for sure what they were thinking when they sent him, if you will, to this discriminatory place. But we can certainly get an insight into that based on his later statements. So specifically, the case stands for the proposition that a later statement can cast shed light on what their intent was. So what I'm getting at is the ageist comments that were made here. And later, we have a statement by Mr. Foley that he's an old bastard. We have a statement by Mr. McDaniel simply stating that you were with this earlier railroad when you started out. And, you know, it's antique, antiquated, and certified nitwit is what CNW stands for. Mr. Shannon, you're within your rebuttal time. You can continue if you like. I would like to reserve, if I may, Your Honor. Thank you. Good morning, Your Honor. Bob Ortbals for Union Pacific and Foster McDaniel, and may it please the court. Don't worry. This job will be yours as long as you want it. After you retire, the job will be eliminated. That is the sum total of the factual allegations that were raised by Mr. Henson against Foster McDaniel in identifying him as an individual defendant in this lawsuit. As alleged in the petition, that singular comment was made in response to Mr. Henson, quote, confronting Mr. McDaniel as to what would happen to him. The statement that Henson's job would be his as long as he wanted it is not unlawful under the Missouri Human Rights Act. The only reason Mr. McDaniel was named as an individual defendant in this action was because of his Missouri citizenship to defeat diversity jurisdiction. Accordingly, the district court correctly held McDaniel was fraudulently joined to defeat diversity, dismissed him, and denied the motion of remand. Notably, Mr. Henson's petition contained numerous allegations against his supervisor, Patrick Foley, who was also named as an individual in Henson's charge of discrimination. Yet Mr. Henson did not name Mr. Foley as a defendant in this action. And the reason for that is that Mr. Henson's counsel brought two separate similar discrimination actions against Union Pacific and Patrick Foley on behalf of Jerry England, who's been referred to in the record and Mr. Henson's briefing, and Martin Kucera. Both were brought in Jackson County. Both were moved to the United States District Court for Western District of Missouri. And in both cases, there was complete diversity because Mr. Foley was a Kansas citizen. And that is why Mr. McDaniel has been named in this case and not Mr. Foley, despite there being substantially more allegations in the petition against Mr. Foley. The sum total of factual allegations in the petition, and Mr. Buchanan has several times referred to Mr. McDaniel as being the manager of the truck desk. That is not alleged in the petitions, your honors. All that the petition identifies Mr. McDaniel as is manager. That's done in paragraph eight. That's done again in paragraph 29. Nothing in the petition actually alleges or explains the relationship between Mr. McDaniel and Mr. Henson. All that is alleged is that he is a manager of some sort at Union Pacific Railroad. The sum total of the facts alleged is that Mr. McDaniel supervised six employees, that he was a Missouri resident, and that he made a statement to Mr. McDaniel about having a job as long as he wanted it. The remaining scant allegations against Mr. Henson are legal conclusions. Conclusory allegations that he aided and abetted a plan at Union Pacific to get rid of Mr. Henson. Now, we don't just have to look to the petition to understand what claims Mr. Henson were brought against Mr. McDaniel. He filed a motion to remand, and the motion to remand characterized the claims in his petition as alleging age discrimination and retaliation. That's in the record at pages 80 and 81. And that the petition alleged that Mr. McDaniel aided and abetted illegal discriminatory and retaliatory acts. That on April 1, 2016, Union Pacific began a plan to get rid of and discriminate against older workers by demoting and transferring Mr. Henson to the truck desk and setting him up to fail. And that McDaniel aided and abetted the plan to set up Henson to fail. There's no mention anywhere in the motion to remand about Henson bringing a hostile work environment claim, about Henson bringing a harassment claim against McDaniel, or even at all in this action. Council, we tie that to the statute of limitations, which is what the district court, you know, the district court ended up ruling on. I know you're trying to probably set it up, I want to just cut to the chase and figure out how all this relates. So absolutely, your honor, and I think it's actually inaccurate to say that the district court's denial of remand was based on a statute of limitations argument. It was not. The whole issue on the remand motion and what the district court looked at is that in the discrimination and retaliation counts pleaded by Mr. Henson, the sole adverse action alleged was a constructive discharge. There's a whole body of authority that have considered that a constructive discharge occurs and is the same as a discharge. So it was not a constructive discharge. The Missouri Human Rights Act was amended, effective August 28, 2017, to eliminate individual liability. So after that date, and as Mr. Buchanan has conceded, there would be no claim under the Missouri Human Rights Act against Mr. McDaniel as an individual. And so that was the basis of the district court's ruling that because only a constructive discharge action was pleaded and the resignation of Mr. Henson occurred in August 2018, so nearly a year after the amended statute went into effect, eliminating individual liability, therefore there was no claim, there was no colorable claim under Missouri law because McDaniel was no longer within the definition of being an employer. At that time. And that is the issue that the court denied remand on, was the fact that the accrual date was after the effective date of the amendment. It was not a statute of limitations issue, your honor. Looking not only how the petition was construed by Mr. Henson in the motion for remand, but looking at the counts of the petition itself, count one alleged age discrimination with the only adverse action stating a constructive discharge, and that's in paragraph 85 of the count. I think something that is important to point out, and I think it's probably been lost a little bit in how these issues were framed, but a careful reading of the petition demonstrates that the only alleged protected activity in the petition occurred on October 25th, 2017 when Mr. Henson filed his EEOC and MCHR charges of discrimination. And that's alleged to paragraph 69 of the petition. October 25th, 2017 is after the effective date of the MHRA amendments, eliminating individual liability. There are no other allegations of protected activity before that date. And if you look at paragraph 28 of the petition, it alleges Mr. Henson kept repeatedly asking what the plan was for him, but never received an answer. There's nothing about complaining about age discrimination in that allegation. Paragraph 29, Henson confronted Mr. McDaniel as to what would happen to him. Nothing about complaining about age discrimination in that paragraph. Paragraph 43, Mr. Henson asked Mr. Foley what was the plan for relocating him. Again, no protected opposition to discrimination. Paragraph 48, Henson repeatedly asked what was to be his future. Again, no protected opposition to discrimination. And then not been told what job he would be placed in and he had to contact Foley for further directions. Those are the only allegations, your honors, in the petition in which Mr. Henson reached out in any way or alleged to have reached out in any way to somebody at Union Pacific about anything relating to his job. None of those are protected activities. The charge was the only protected activity alleged in this case. That occurred after the effective date of the amendments. Because there can be no retaliation as a matter of law before protected activity occurs, any type of retaliation alleged in the petition accrued after the effective date of the MHRA. Looking at the two paragraphs in the petition that actually used the words hostile work environment, neither of which were pleaded as counts to the claim, neither of these allegations, both of which are conclusory in nature, implicate defendant McDaniel whatsoever. And here, I think, is an important point on this, your honors, is that there has to be some type of agency reason to impose liability against an individual defendant. In a hostile work environment situation, an employer, in this case, Union Pacific is the supervisor acting on its behalf. But in this situation, with an individual manager, there is nothing in the petition that establishes that any of the alleged harassers had any relationship with Mr. McDaniel such that he could be liable for their conduct. And Mr. Buchanan has tried to frame it as essentially Missouri follows this rule that as long as you're a supervisor, you can be individually named and responsible, but that is not the law. The Court of Appeals looked at this in the Reed versus McDonald's case, where the company's president was the named individual defendant, and the Reed court granted summary judgment, and the president's failure finding that there could be no individual liability because the president was not involved in the actual discriminatory conduct. And the president did not actually oversee the discriminatory conduct. All of the cases, Missouri cases, imposing individual liability have required the president to be either the discriminator or overseeing the discrimination. And in this situation, there are no allegations that Mr. McDaniel did so. None. There's no allegations about his relationship to any of the persons in this case, let alone Mr. Henson. Mr. Henson failed to plead specific facts from which the court could reasonably have inferred that McDaniel aided and abetted unlawful age discrimination and retaliation. Aiding and abetting the wrongdoing of another requires pleading and proving that the defendant affirmatively acted to aid the primary tortfeasor to give giving substantial assistance or aided and abetted this plan to get rid of Mr. Henson. Colorably or reasonably demonstrating that Mr. McDaniel was affirmatively acting to aid any of the alleged wrongdoers by giving substantial assistance or encouragement. Accordingly, because there is no pleading about the relationship between Mr. McDaniel and the wrongdoers, let alone affirmative acts that Mr. McDaniel was engaged in, there's no colorable claim that McDaniel aided and abetted any discrimination or retaliation prohibited by the Missouri Human Rights Act. Counsel, I wanted to ask you quickly about the second issue, which I know opposing counsel didn't address, which is the charge and the specificity of the charge on the constructive discharge claim. He seems to say, look, I'm being set up for failure, and this is equivalent to career surrender. And then several months later, he ends up quitting. I just want to know your response, even though I know the opposing counsel didn't cover it. Well, your honor, I think it's nine months later that he ended up quitting. But as the U.S. Supreme Court has recognized in green, and as the case is recognized, constructive discharge does not happen until the resignation occurs. And under Morgan, which is followed by the Missouri it is impossible to have happened. And so while Mr. Henson may have said, I think somewhere down the line, I may have to resign because of this work environment that I'm in. At the time of his charge, he had not resigned. He could not assert as a matter of fact that he was no longer employed by Union Pacific. And so the consequence of him no longer being employed nine months later was a discreet act that required either a new charge or an amended charge, neither of which were filed. I am out of time, your honors, but I will answer any further questions that you have. Thank you for your time. Thank you, Mr. Wartbolz. Mr. Buchanan. Please unmute your mic. Sorry about that. Thank you, Judge. To go to Judge Strauss' point, the exhaustion issue, it was covered in the EEOC investigation because of a timing quirk. The defendant did not get a copy of this charge until June of 2018. So when he resigned two months later, that became part of the EEOC investigation, including his resignation letter. So by a one looks at the purpose of exhaustion, and we briefed this in our case. But as to what they say about the standard here, they say we only pleaded a claim for constructive discharge. Correct, to the extent that they're trying to say that you construe everything in favor of the defendant. Well, even if we do, which is not the proper standard for remand at all, it's contrary to the standard for a motion to dismiss. Even so, the correct truth of the matter is that you can have a constructive discharge without discrimination. The underlying content is what he didn't mention. The second element, the precipitating conduct, of course, is alleged in the petition in paragraphs 29 to 45 that occurred before the charge was filed in the of a hostile work environment. So you cannot just have a free-floating claim for constructive discharge. It would be dismissed unless you allege the basis for it, which is the first element. So I think the court understands that. But to say that only one issue, only one fact, that's incorrect. A defendant should not be allowed, and let's make it clear, they're trying to say that standard should be construe the petition against the plaintiff on this motion to dismiss. They don't pierce the pleadings, even though the law of this circuit says, yes, you can look at summary judgment type evidence. He was the manager of what? The judge might wonder. Of the truck desk, and that's why he's named and why Foley isn't named. This was the man who was in charge of those three men, all over 60, who were sent over to Armordale and KCK. And that's the basis, not that the one comment, which if, as we said, was simply encouraging him to stay in that dead-end job. And like his partner, Mr. Lamborn, who had just resigned in May of 2017, to quit. And so they wouldn't have to fire him. And that's our case. Thank you, Mr. Buchanan. Thank you also, Mr. Orvals.